UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PAUL ROGERS,

    Plaintiff,

v.

CAROLINE HARDY, *et al.*,

    Defendants.

Case No. C05-5231 FDB/KLS

REPORT AND RECOMMENDATION

**NOTED FOR:
JUNE 22, 2007**

    This civil rights action has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636(b)(1) and Local MJR 3 and 4. Plaintiff is a Washington State prison inmate currently incarcerated at Stafford Creek Corrections Center (SCCC). Plaintiff claims that SCCC mailroom employees wrongfully withheld his legal mail for four days, causing him to miss a deadline for filing his personal restraint petition in state court. Presently before the Court is the motion for summary judgment of Defendants Caroline Hardy, Cheryl Sullivan, Van Redding, Lester Tuffree, and Paul Sturm.[1] (Dkt. # 60). Having carefully reviewing the motion, Plaintiff's response (Dkt. # 61), and Defendants' reply (Dkt. # 62), the undersigned recommends that

---

[1] Defendant Byron Jamtass has not been served with the summons and complaint and is, therefore, not a party to this lawsuit and is not represented by counsel.

REPORT AND RECOMMENDATION- 1

Defendants' motion should be granted and Plaintiff's claims against Defendants be dismissed with prejudice.

## I. STATEMENT OF FACTS

The following facts are not in dispute. Plaintiff is in the custody of DOC pursuant to a judgment and sentence entered in Pierce County on October 7, 2002. (Dkt. # 60, Exh. 1, Attach. A at 1). Pursuant to RCW 10.73.090(1) there is a one year limit on collateral attack of a judgment and sentence in a criminal case. The deadline for Plaintiff to submit a Personal Restraint Petition (PRP) collaterally attacking his judgment and sentence was October 7, 2003. Plaintiff and his counsel, Cynthia Jordan, prepared a PRP challenging the calculation of his sentence. Jennifer Dean, legal assistant to Cynthia Jordan, mailed the personal restraint petition to Plaintiff on Wednesday, October 1, 2003 via overnight/next day air delivery. (Dkt. # 14 at 8-9).

In October 2003, there were approximately 1,879 inmates residing at SCCC. (Dkt. # 60, Exh. 2). In that month, the mailroom processed approximately 16,960 pieces of standard sized incoming mail, 9,790 pieces of oversize pieces of mail, 798 packages from United Parcel Service and United States Postal Service, 993 pieces of certified/legal mail. (*Id.*). Although sent via overnight/next day air delivery, the mail in question was noted as received by the mailroom on Friday, October 3, 2003 at 2:08 p.m. (*Id.*, Exh. 2 and Attach. C). Correctional Office Redding entered the legal mail addressed to Plaintiff from the Jordan Law Offices into the Pitney Bowes Mail record and tracking system. (*Id.*). In accordance with DOC Policy Directive, 450.100, Mail for Offenders, and practice, Plaintiff's legal mail was delivered to him on the next business day, Monday, October 6, 2003. (*Id.*). On that same day, Plaintiff mailed his PRP to the Court of Appeals, Division III.

REPORT AND RECOMMENDATION- 2

According to SCCC mailroom practice, Plaintiff's PRP left SCCC on October 7, 2003. (Dkt. # 60, Exh. 2). The Court of Appeals received Plaintiff's PRP on October 9, 2003. (Dkt. # 14 at 8 and Dkt. # 7 at Exh. 2[2]). Pursuant to RAP 18.6(c), in existence in 2003, Plaintiff's petition had to be received by the Court of Appeals on the deadline date in order to be considered timely filed. RAP 18.6(c)(2000). Plaintiff's PRP was not accepted for review by the Court of Appeals because it was filed two days late. (*Id.*).

## II.  DISCUSSION

**A.    Standard of Review**

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring

---

[2]The face sheet of Plaintiff's PRP reflects a received date stamp of October 9, 2003. (*See* Dkt. # 7, Exh. 2) (Exhibit 2 is not physically attached to Plaintiff's Second Amended Complaint (Dkt. # 14), but it is referenced in Attachment A to the Second Amended Complaint.

REPORT AND RECOMMENDATION- 3

a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Service Inc.*, 809 F.2d at 630. The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. *Id.*

**B.  Plaintiff Has Failed to State A Claim In Violation of 42 U.S.C. § 1983 And Defendants Are Entitled to Summary Judgment As A Matter Of Law**

To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the defendant must be a person acting under color of state law, (2) and his conduct must have deprived the plaintiff of rights, privileges or immunities secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87, (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), cert. denied, 449 U.S. 975 (1980). When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed. The Civil Rights Act, 42 U.S.C. § 1983, is not merely a "font of tort law". *Parratt*, 451 U.S. at 532. That plaintiff may have suffered harm, even if due to another's negligent conduct, does not in itself, necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344 (1986).

REPORT AND RECOMMENDATION- 4

### 1.     Denial of Access to Courts

Plaintiff contends that he was denied access to the courts in violation of his constitutional rights. Specifically, Plaintiff alleges that SCCC mailroom staff wrongfully withheld the delivery of his mail for a period of four days thus interfering with his ability to send the PRP to the Court of Appeals until the day before it was due.  Consequently, his PRP was not timely and was barred from review.

Prison inmates possess a fundamental constitutional right of access to courts in order to contest the fact, duration and conditions of their confinement. *Bounds v. Smith*, 430 U.S. 817, 822-23 (1977).  However, *Bounds* did not "create an abstract, free-standing right to access to a law library or to legal assistance." *Id.*    The provision of law libraries and legal assistance are just two methods by which a state can provide inmates meaningful access to the courts. *Lewis v.* Casey, 518 U.S. 343, 349-52 (1996).  If the claim does not involve the adequacy of law libraries or the adequacy of assistance, then the court must consider whether the claimant has alleged an "actual injury" to court access. *Id.*  Actual injury consists of "some specific instances in which an inmate was actually denied access to the courts." *Id.*  A demonstration of actual injury does not automatically result in a right of access violation.  *Id.* at 353.

Delays in inmate receipt of legal materials do not necessarily result in an access to courts violation  "…so long as the [delays] are the product of prison regulations reasonably related to legitimate penological interests[;] such delays are not of constitutional significance, even where they result in actual injury . . . . " *Id.* at 361.

Plaintiff alleges an actual injury.  His PRP was not considered by the Appellate Court and he alleges that this was caused by Defendants' deliberate delay of his mail.  Plaintiff did not receive his PRP until October 6, 2003 and therefore, he was not able to meet the statutory filing deadline of

REPORT AND RECOMMENDATION- 5

RCW 10.73.090(1).

In analyzing Plaintiff's right to access, the Court must examine whether any delay in the receipt of his PRP was the product of prison regulations reasonably related to legitimate penological interests. Defendants argue that SCCC has a legitimate penological interest in providing security and safety to the public, inmates, staff and facility and in the effective management of the high volume of mail the inmates receive and generate. SCC follows DOC mail delivery policies and practices and its regulations regarding mail processing and delivery are reasonably related to its legitimate penological interests.

The Court must consider several factors in determining the reasonableness of the regulation at issue: (1) whether there is a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are other avenues available to the inmate; (3) the impact of the asserted right on guards or other inmates and on the allocation of prison resources generally; and (4) the absence of ready alternatives. Turner, 482 U.S. at 89.

The DOC had policy directives governing mail services in place during October 2003. (Dkt. # 60, Exh. 2). The policy provides for the inspection of incoming and outgoing mail to prevent offenders from receiving or sending contraband, or any other material that threatens to undermine the security and order of the facility, through the mail; and to prevent criminal activity. (*Id.* at 2). Legal mail can only be opened in the presence of the offender and the contents are inspected to ensure that the mail is free from contraband or other material that would threaten the security and order of the facility[3]. (*Id.* at 7).

---

[3] DOC Policy Directive 590.500, entitled "Legal Access for Offenders" in pertinent part, sets forth the requirements for the classification of mail as "legal mail." The status of Plaintiff's PRP as

REPORT AND RECOMMENDATION- 6

The SCCC mailroom manages a high volume of mail received for the approximately 2,000 offenders. (Dkt. # 60, Exh. 2).  The mailroom at SCCC is operational five days a week, excluding weekends and holidays. (*Id*.).  Mail within SCCC is delivered and picked up Monday through Friday. (*Id*.).  Mail is not logged in or delivered on Saturday or Sunday. (*Id*.).  Mail arrives at SCCC in the afternoon between 1:00 p.m. and 2:30 p.m. (*Id*.).  Mail delivered by Federal Express or other next day carriers is processed the same as other incoming mail. (*Id*.).  Each piece of mail is scanned to check for contraband or other threatening material using an x-ray machine. (*Id.*)

Although not written in the policy in effect at that time, the practice was to deliver legal mail to inmates within 24 hours of receipt, excluding holidays and weekends. (*Id*.).  To implement this practice, the mailroom staff sorts through the incoming mail and removes all certified and legal mail and it gives it to the Legal Mail Officer. (*Id*.).  The Legal Mail Officer logs in the arrival of legal mail in the Pitney Bowes Mail Record and Tracking System (electronic log). (*Id*.).  After the legal mail is logged in, the Legal mail officer enters it into facility call out system to notify the inmates that legal mail has arrived and for them to pick it up at the next business days' call out. (*Id*.).  At the time the inmate picks up his legal mail he signs for it and the Legal Mail Officer logs it in as delivered. (*Id*.).

Outgoing legal mail is brought by the inmate to the unit officer to log into the outgoing legal mail log. (*Id.*).  The outgoing mail is picked up at 7:30 a.m. Monday through Friday. (*Id*.).  All of the outgoing mail is sent out the same day that it is picked up from the units. (*Id*.).  The United States Postal Service picks up the mail between 1:00 p.m. and 2:30 p.m. on Monday through Friday. (*Id*.)

In Plaintiff's case, SCCC's electronic log reflects that legal mail item No. 8776065089136,

---

legal mail is not in dispute.

REPORT AND RECOMMENDATION- 7

addressed to Plaintiff from the Jordan Law Office, was logged in on Friday, October 3, 2003, at 2:08 p.m. (*Id*., Attach. C, Attach. D).  Plaintiff' legal mail was delivered to him on Monday, October 6, 2003 at 12:48 pm.  (*Id*.).  The Legal Mail Log shows that on that same day, October 6, 2003, Plaintiff submitted mail to the unit officer addressed to the Court of Appeals.  (*Id*., Attach. E).  Plaintiff's outgoing mail would have been picked up on October 7, 2003 at 7:30 a.m. and given to the United States Postal Service worker that afternoon when he arrived to deliver and receive mail. (*Id*.).

Defendants argue that the SCCC practices and procedures of inspecting and delivering mail in place pursuant to DOC Policy Directive 450.100 are the best means of ensuring that mail received and sent from the prison does not contain contraband or other illegal material that could endanger the public, inmates, staff or the facility.  Alternative means of processing the high volume of mail that would ensure safety and allow for expedited delivery of legal mail using the available resources, do not exist.  Moreover, the impact of accommodating expedited delivery of legal mail sent by overnight/next day delivery carrier would be enormous in terms of staffing costs and inefficient use of staffing resources.  Therefore, Defendants contend that the practices and procedures utilized by SCCC to implement DOC Policy Directive 450.100 are rationally related to the legitimate penological interest of ensuring safety, security and effective management of the high volume of mail that the prison receives.

Based on a review of the undisputed evidence before it, the Court concludes that the mailroom staff followed its practice of delivering legal mail within twenty-four hours of receiving it. Plaintiff's legal mail was logged in on Friday afternoon and delivered on Monday afternoon.  The undersigned also concludes that due deference should be given to DOC's policy of inspecting mail to ensure that it is free from contraband or other harmful material prior to delivery and that SCCC's

REPORT AND RECOMMENDATION- 8

chosen means of doing so are rationally related to the legitimate penological interest of ensuring safety, security and effective management of the high volume of mail that the prison receives.

Plaintiff alleges that the prison's electronic record was created after the fact for litigation purposes. (Dkt. # 61 at 4). However, the Court has no evidence that this allegation is anything other than speculation. In addition, there is evidence before the Court that Plaintiff was in receipt of the electronic log as early as May 26, 2006 as part of Defendant Sullivan's Declaration. (Dkt. # 29, Exh. 4, Attach. A). Plaintiff also alleges that there are "material differences" in Defendants' sworn statements. (Dkt. # 61). In particular, Plaintiff alleges that Defendant Sullivan has changed her sworn statement (from the sworn statement given on May 26, 2006 (Dkt. # 29, Exh. 4) and that given in support of the instant motion (Dkt. # 60, Exh. 2)). The Court has read the statements together, however, and they are not different but are consistent and explain the processes and policy of SCCC for handling incoming and outgoing mail.

The undisputed evidence before the Court reflects that Plaintiff's legal mail was delayed one day for inspection and was not logged in until Friday afternoon and not delivered until Monday afternoon. The undersigned concludes that this delay is not of constitutional significance, even though an actual injury, missing a statutory deadline, occurred in this case.[4]

There is no summary judgment evidence of any wrongful withholding of Plaintiff's mail. The

---

[4]This analysis does not change even if we assume that the PRP was received via the overnight delivery in the prison on Thursday, October 2, 2003. Based on SCCC inspection, recording, and notification processing, the earliest it could have been delivered to Plaintiff would have been the afternoon of Friday, October 3, 2003. Assuming Plaintiff reviewed and signed it on the same day he received it and deposited it into the outgoing mail system, the earliest it would have been picked up by the prison staff and sent out via the postal service would have been Monday, October 6, 2003. Using the actual mail delivery time period in this case of two days, the Court of Appeals would not have received the PRP until October 8, 2003, after the statutory filing deadline.

REPORT AND RECOMMENDATION- 9

undisputed evidence shows that there are no genuine issues of material fact and the record, taken as a whole, supports judgment in favor of Defendants.

### 2. Personal Participation of Defendants / Qualified Immunity

Defendants urge, in the alternative, that they are entitled to summary judgment because plaintiff has failed to set forth the specific factual bases upon which he claims each defendant is liable, rather than relying solely on vague and conclusory allegations of supervisory responsibility or position. *See, e.g., Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)(Defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978); *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982).  In addition, Defendants urge that they are, in any event, entitled to qualified immunity from the claims of Plaintiff.   As the Court has determined that Plaintiff has failed to allege a deprivation of an actual constitutional right, the issues need not be reached. *See, e.g., Conn v. Gabbert*, 526 U.S. 286, 290 (1999).

### III. CONCLUSION

For the reasons stated above the Court should **GRANT** Defendants' motion for summary judgment and dismiss Plaintiff's claims. A proposed order accompanies this Report and Recommendation.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **June 22, 2007**, as noted in

REPORT AND RECOMMENDATION- 10

1 | the caption.

3 |     DATED this 23rd_ day of May, 2007.

/s/ Karen L. Strombom
Karen L. Strombom
United States Magistrate Judge

28 | REPORT AND RECOMMENDATION- 11